UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAY RHEAD,                                No. 2:09-cv-00705 MCE-GGH

       Plaintiff,

  v.                                       MEMORANDUM AND ORDER

RYDER INTEGRATED LOGISTICS,
INC., a Delaware Corporation
doing business in California;
DOES 1 through 30, inclusive,

       Defendant.

----oo0oo----

Plaintiff Ray Rhead ("Plaintiff") seeks damages as a result of injuries he sustained during and after his employment with Defendant Ryder Integrated Logistics, Inc. ("Defendant"). Plaintiff alleges he was subjected to work in a hostile and uncomfortable working environment stemming from an inter-office affair between two employees. He further claims to have been ultimately terminated by Defendant for complaining about the affair.

///

1

Plaintiff's Complaint was filed in Sacramento Superior Court in January 2009. (ECF No. 1.) Defendant removed the action to this Court, as complete diversity of citizenship exists between the parties, and the amount in controversy exceeds the statutorily required amount. Although no motion to dismiss was ever filed, Defendant has now moved for Summary Judgment (ECF No. 22) against Plaintiff, arguing that (1) Plaintiff cannot establish a prima facie case for retaliation in violation of California's Fair Employment and Housing Act ("FEHA"), (2) a claim for wrongful termination for public policy reasons cannot be sustained by a claim of a statutory violation, and (3) Plaintiff is not entitled to argue that an implied covenant of good faith and fair dealing applies to his employment because such a covenant cannot alter terms of an at-will employment relationship. For the reasons stated below, Defendant's Motion will be denied.[1]

**BACKGROUND[2]**

Defendant is a Delaware corporation with its primary place of business in Florida and a facility in Stockton, California, and provides transportation and shipping services out of this location.

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[2] The factual assertions in this section are based on the allegations in Plaintiffs' Complaint (ECF No. 1) unless otherwise specified.

2

On or about July 2004, Plaintiff was hired by Defendant as a temporary driver. By November 2005, Plaintiff worked for Defendant full-time.[3] During a discussion about his full-time employee status, Plaintiff and his supervisors, including Ms. Bradshaw, discussed the policy for requesting days off. Plaintiff was under the impression that time off requests would be honored as long as they were made two weeks in advance.

During the course of his employment, Plaintiff's supervisor, Stephanie Bradshaw, allegedly engaged in an inter-office affair with a married co-worker. Ms. Bradshaw was also married, and the two conducted the affair during work hours and on Defendant's premises. Plaintiff complained directly to Logistics Manager B.J. Kline, and made it "expressly clear that he found the inappropriate sexual behavior" between Ms. Bradshaw and the other co-worker highly offensive. Plaintiff also made his disapproving feelings well known within Defendant's Stockton facility. At some point in late 2006, Ms. Bradshaw was promoted and placed in charge of daily operations and driver scheduling.

Plaintiff requested a vacation day for June 20, 2007. When Plaintiff originally broached the request to Ms. Bradshaw, she stated that "it would be difficult for her to grant him his day off request and that he should re-submit the request two weeks prior to the date requested."

---

[3] Defendant argues Plaintiff was aware he signed an agreement at the time of hiring stating that he was an at-will employee whose employment could be terminated at the discretion of either party. (Def. Mot. at 10.) While Plaintiff does not state that he was an at-will employee in the Complaint, he does not refute Defendant's assertions in his Opposition (ECF No. 33). For purposes of this motion only, the Court will treat Plaintiff's employment status as at-will.

3

Plaintiff did so, but ultimately did not receive the day off. Upon learning this, Plaintiff informed Defendant, through Ms. Bradshaw, that he would not be showing up to work on June 20, 2007, despite his clear understanding that he had not been granted the day off.  Two days later, Defendant terminated Plaintiff's employment.

Defendant's Employee Point System ("EPS") provides that prior to an employee being terminated for attendance issues, he or she must receive a verbal and written warning, and a suspension within the six months prior to termination.  Plaintiff was neither written up nor suspended according to the terms in the EPS, which, according to Plaintiff, would have been the appropriate discipline in light of his failure to appear for work on the scheduled day.  Despite these express provisions, Plaintiff believes that Defendant terminated him in retaliation for "openly opposing [Ms. Bradshaw's] sexually inappropriate behavior" in the workplace.

Defendant denies terminating Plaintiff's employment based on retaliation for his complaints and opinions about Ms. Bradshaw's affair, and insists the company had granted many of Plaintiff's other requests for days off long after he had complained about Ms. Bradshaw's affair.  (See Def. Mot. at 10-11.)  Defendant contends Ms. Bradshaw simply did not grant Plaintiff June 20th off because two other, more senior drivers already had requested the day, and six other drivers were already going to be out on June 20.  (Id.)  Ultimately, Defendant argues that Plaintiff was terminated solely because he failed to report to work despite explicit instructions from his manager to do so.

**STANDARD**

The Federal Rules of Civil Procedure[4] provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.

///

---

[4] Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**ANALYSIS**

**A.   Retaliation**

FEHA was enacted to prohibit employment discrimination based on sex, race, religion, physical disability, or other protected class.  Cal. Gov't Code § 12920.  California cases have established that preventing sexual harassment in the workplace is a legitimate goal under FEHA, one that includes protection against the creation of a work environment that is hostile or "abusive on the basis of sex," even if "plaintiff [himself] never is subjected to sexual advances."  Miller v. Dept. of Corrections, 36 Cal. 4th 446, 461-2 (2005).  Such a claim may stand when a "sexual relationship impresses the workplace with such a cast" that conveys a demeaning and sexist environment among employees.  Id. at 469.

FEHA protects employees against retaliation for reporting discriminatory behavior.  Specifically, § 12940(h) states that no employer may discriminate against an employee for opposing "any practices forbidden under this part or because the person has filed a complaint, testified or assisted in any proceeding under this part."

///
///
///

To prove retaliation under FEHA, a plaintiff must be able to demonstrate the following: (1) he engaged in protected activity; (2) the defendant subjected him to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's adverse action. See Miller, 36 Cal.4th at 472.

An employee cannot establish protected activity unless one can show that there is an ongoing unlawful discriminatory practice taking place in the workplace. Yanowitz v. L'Oreal USA, 36 Cal. 4th 1028, 1046-1047 (2005). But it is "well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited" by FEHA. Id. at 1043. The California Supreme Court's Miller decision also construes such activity as protected. See 36 Cal. 4th at 474 (complainting of a sexually charged environment "may constitute sexual harassment in violation of FEHA." (emphasis supplied)). Further, any question of Plaintiff's subjective, good faith belief "involves questions of credibility and ordinarily cannot be resolved on summary judgment." Id. at 476.

Plaintiff contends that he was fired in retaliation for complaining to management and openly criticizing Ms. Bradshaw's affair. In his opposition to Defendant's motion, Plaintiff argues that he reasonably believed Ms. Bradshaw's relationship (and sexual activity in the workplace) was both unlawful and highly offensive.

///
///

7

Plaintiff's ability to prove retaliation hinges on his ability to demonstrate that his complaints to management about the affair constitute protected activity under FEHA.

The veracity of any reasonable belief Plaintiff had about his conduct and the conduct of Ms. Bradshaw and Defendant cannot be determined on summary judgment. Viewing the evidence in the light most favorable to Plaintiff, the Court finds there are triable issues of fact as to whether Plaintiff was retaliated against for openly opposing Ms. Bradshaw's affair. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim must be denied.

**B.  Wrongful Termination**

A wrongful termination case can be brought against an at-will employer for public policy reasons if the discharged employee can demonstrate that they were terminated for reporting a statutory violation that served the public's benefit. <u>Green v. Ralee Engineering Co.</u>, 19 Cal. 4th 66, 76 (1998). The policy must be "public in that it affects society at large, rather than the individual, must have been articulated at the time of discharge, and must be fundamental and substantial." <u>Id.</u> (internal citations omitted).

///
///
///
///
///

Violations of statutorily-authorized regulations can be used as evidence of a public policy violation in "retaliatory discharge actions." Id. at 80. The difficulty in assessing these types of cases "lies in determining" the line between "claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee." Phillips v. St. Mary Reg. Med. Ctr., 96 Cal. App. 4th 218, 226 (4th DCA 2002).

Plaintiff argues that he was wrongly terminated because he complained about Ms. Bradshaw's affair. According to Plaintiff, this retaliatory behavior violated public policy since the conducts violated § 12940. Defendant's motion argues both that (1) Plaintiff's prima facie case fails to allege that his discharge violates public policy, and (2) the language of Plaintiff's complaint states that the public policy violation is actually a recitation of the code, which cannot itself establish that he was engaged in protected activity as required under FEHA.

Defendant's position is misguided. Case law demonstrates that eliminating conduct which constitutes a statutory violation may indeed inure to the public's benefit. See supra. An inference can reasonably be drawn from the evidence before the Court that Plaintiff reported Ms. Bradshaw's affair, not just because he found her conduct offensive, but also because the affair was negatively permeating the entire workplace. This raises a triable issue of fact as to whether Plaintiff's actions served the public benefit.

///

///

Since the Court cannot weigh conflicting evidence at this stage of the case, Defendant's request that Plaintiff's Wrongful Termination claim be adjudicated in its favor must also be denied.

### C.  Breach of Implied Covenant of Good Faith and Fair Dealing

California, through statute and common law, recognizes that an at-will employment scheme may be terminated by either party without cause. Guz v. Bechtel Nat., Inc., 24 Cal. 4th 317, 335 (2000). Several limitations of the scope of the at-will doctrine have been recognized, including the acknowledgment that an employment relationship is "fundamentally contractual," giving the parties freedom to agree to limitations on termination rights. Id. at 336 (internal citations omitted). Such an agreement need not be express, but "may be implied in fact, arising from the parties' conduct evidencing their mutual intent to create such enforceable limitations." Id. (emphasis supplied). Where such evidence may exist, the totality of the circumstances must be examined to determine whether the conduct or agreement created an implied-in-fact contract "limiting the employer's termination rights." Id. at 337.

Plaintiff and Defendant had an express at-will employment contract, and the EPS attendance plan was part of Defendant's work policies and regulations. Plaintiff argues that he was entitled to certain protections and due process under Defendant's EPS plan, given the verbal assurances he received that to receive days off he only had to provide two weeks' notice.

10

1  According to Plaintiff, because the "relationship between
2  employer and employee is fundamentally contractual," an implied
3  covenant of good faith and fair dealing also existed as an
4  inherent part of his employment, which "implies a promise that
5  each party will refrain from doing anything to injure the other's
6  right to receive the benefit of the agreement."  (Compl. ¶ 33.)
7  Defendant, in turn, argues that because Plaintiff was an at-will
8  employee under contract, the covenant of good faith and fair
9  dealing cannot be used to vary the at-will employment contract's
10 express terms.
11      While Plaintiff may have been an at-will employee, there is
12 triable evidence that both the EPS system and Defendant's verbal
13 agreement to a days-off policy altered the terms of Plaintiff's
14 at-will relationship, and created de facto conditions for
15 termination.  In particular, the EPS's standards for due process
16 before termination for attendance reasons may suggest the at-will
17 employment agreement was contingent on Defendant honoring the
18 program's specified terms.  For these reasons, Defendant's Motion
19 for Summary Judgment as to this cause of action is denied.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

11

**CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment is DENIED. The amended dates of the Pretrial Scheduling Order stand (ECF Nos. 16, 17). The parties are to file a Joint Status Report within thirty (30) days of this Order being electronically filed.

IT IS SO ORDERED.

Dated: December 2, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE